MáNLY, J.
The answer of the officer having custody of the petitioner to the writ of habeas corpus discloses a case which cannot be prosecuted further under the writ. The following return is made : “ W. T. Shipp maketh oath that Patrick Rafter was arrested and is new detained by him as a person liable to do military duty, and who is attempting to avoid'the same ; that his arrest and detention -is in pursuance of the authority of the Secretary of War of the Confederate States;”
The act of Congress, after declaring the writ of habeas corpus suspended'.in its application to arrests made by the President or Secretary of War in certain enumerated cases, provides that “ during the suspension, no military or other officer shall be compelled, in answer to any writ of habeas corpus, to appear in person or return the body of any person detained by him by the authority of the President pr Secretary of War, but upon the certificate, under oath, of the officer having charge of any one so detained, that such person is detained by him as a prisoner under the authority aforesaid, further proceedings under the writ of habeas corpus shall immediately cease, and remain suspended so long as the act shall continue in force.
It appears to me clear,-from the provisions of the law, that Congress'intended to take awáy from the ordinary tribunals of the country all enquiry by habeas corpus into arrests made by the President or Secretary of War, professedly in any of the enumerated cases.
Congress is so guarded upon this point that it prescribes the form of the return which the officer sited by the writ is to make, and which it declares shall be sufficient; and this form tenders no issue, and leaves open . no opportunity for making an issue upon the construction of the law. *154 The officer’s return, in the case before me, pursues the form prescribed ; and that, by- the terms’ of the act,.puts an end to all further inquiry. *It results that no question can'be properly raised in the matter before me, unless it ■be a question as to the power of Congress to pass such a law. I see n,o sufficient reason for holding the law invalid for defect of power.
The Confederate Constitution (art. 1, sec. 9, par. 2,) declares'that, the writ of habeas corpus shall not be suspended unless when,.in cases of rebellion' or invasion, the public safety may require it. This is a “negative pregnant,” which implies a power in Congress, within the sphere of the general government’s action, to suspend the writ, as the. Parliament of England was wont to do, subject to tKe limitation that the power sljall be exercised only in cases .of rebellion and invasion, when the public safety may require it. Invaded from all quarters by the public enemy, as .the. States were at the late session of Congress, the occasion had arisen when that body might lawfully consider of the exigency for a suspension of the writ. .It did so consider ; decided in favor of a. suspension in the cases enumerated, and this decision is necessarily conclusive. ...
It is conceded-as a high exercise of the legislative power ; but it is believed not to be beyond its legitimate range, while Abe momentous and- profound exigencies, with which the country.is now struggling, are its full jus-1 tification. ’ " . . n
An affidavit is found among the papers, from which it appears that petitioner claims now to be 41 years of age, .and to be exempt by reason thereof from enrolment to do military service to the Confederate States. Aceording to the view taken by me of the law, the question thus raised is excluded from consideration. But if, it should turn out that I am in error in this construction, and the point be made and considered, it will not avail the petitioner. 1
*155 The first section of the militafy bill provides that all white men between the*ages of 17 and 50 shall be in the military service of the Confederate States during the war. In the fifth section, those between. 17 to 18 are placed in a reserve corps, not to- serve out of the State in which they reside. 'In the eighth section, power is given to the President to detail from the class between 45 and #0’, persons, for office, hospital and other similar duties. No restriction seems to bo imposed upon the employment of this latter class in military field dui ¡es ; and- the enrollment and arrest for duty of petitioner, are not, therefore, an-illegal interference with his personal liberty. Indeed, had Congress limited the field of duty to the State, as in the case of persons between 17 and 18, the mustering him into service simply, and placing him in -k camp of instruction near the capital of the State, which is the alleged trespass upon his rights, would pot be illegal. The arrest and detention would not be without' warrant of law ; and the writ under which l^e is seeking redress is confined in its office to the enlargement from imprisonment or custody of persons so arrested and detained, and none others. - .
Upon the questions which-have arisen.out of the laws of April and September, 18G2, as well as that of January last, usually called the conscription act, some future .occasion may be afforded of giving to the public my views. At .present I abstain from any discussion of them, as it is not necessary, and they may be the subject of future reviews in the Court of which I am a member. • •
I deem it proper, to state that the petition in the case does not set forth the alleged ground for the petitioner’s arrest; but I concluded to overlook this defect and meet at once the questions raised upon the construction of .the law. ■ I mention it here that it njay not be regarded as a precedent against, me. In general it i¡s believed to be more consistent with a just and prompt execution of the *156 laws to require petitioners to set forth the grounds of controversy so far as they are known ; and if the petition disclose a case to which the act of suspension clearly applies, it seems to me it ought to be rejected.
The petitioner is remanded to the custody of the officer'.